JAMES I. HURLEY *vs.* RICHARD T. HOLLYDAY.

*Vendor's Lien—What does not constitute Payment.*

Where the vendor of real estate retains the legal title, he does not waive his lien by taking the note of the vendee, with personal security of a third party, for the payment of the purchase money.

The taking of a promissory note by the vendor of real estate for a part of the purchase money does not, in the absence of an express agreement to that effect, operate as a payment of so much of the purchase money.

APPEAL from the Circuit Court for Washington County, in Equity.

The facts of this case are as follows: The appellee sold his farm to James Wason, for $20,130, on the 8th of January, 1866, agreeing to receive in part payment thereof an undivided one-third interest, valued at $4,000, in the Hagerstown Foundry, and the remainder to be paid as follows, to wit: $1,000 on April 1st, thence following, and the balance, being $15,130, to be paid in five annual payments, with interest. It was agreed that upon the payment of $7,000, the appellee would execute a deed to Wason, upon his executing a mortgage, or otherwise securing the payment of the balance of the purchase money. Wason paid on account of the purchase money, in four different payments, the sum of $2,000. On May 2d, 1867, he executed three several notes to the appellee—one for $1,000, with John W. Stouffer as security; one for $1,500, with John Kendel as surety; and one for $449.38, executed by himself alone. The appellee gave his receipt to Wason, dated same day, for $2,949.38. This receipt will be found set out in full in the opinion of the Court. It was admitted that said receipt was given for the three notes, and that they remained unpaid; that Wason went into possession of the farm, and died in August, 1867, intestate, indebted for the purchase money remaining unpaid, and not having received a deed for the farm. His personal estate was not sufficient for

the payment of his debts; and upon a creditors' bill filed in September, 1867, against his heirs and personal representatives, the farm in question was sold.

The sale was ratified, and thereupon the appellee filed his petition in the proceedings in equity, for the application of so much of the proceeds of sale as would pay the balance of the purchase money due to him by Wason, and not having parted with his legal title, insisted on his vendor's lien, and claimed full and preferred payment out of the money in the hands of the trustee.

In this petition he claimed payment of the sum of $2,949.38, as unpaid purchase money, and filed the notes covering that sum with the petition, as exhibits.

The matter was referred to the auditor to ascertain the amount due the appellee and to state an account. The auditor found the balance due the appellee for purchase money $9,665.47, and in his account distributed the purchase money received to that date to the appellee.

In this account and statement, the auditor discarded the three notes for $2,949.38, and considered the same as purchase money unpaid, and therefore constituting a vendor's lien upon the fund, and reported accordingly.

Exceptions were filed by the appellant, a creditor of Wason, to this account and statement, because the auditor did not consider the said notes as an absolute payment, and a waiver by the appellee of the vendor's lien, and therefore not to be considered as a part of the purchase money remaining unpaid by Wason to the appellee, and as having priority of payment as against the fund.

The Court (Perry, J.,) overruled the exceptions and ratified the account. Thereupon this appeal was taken.

The cause was argued before Bartol, C. J., Grason, Miller, and Robinson, J.

*Z. S. Claggett*, for the appellant.

*William T. Hamilton,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

The questions in this case arise upon an agreed statement of facts. There is no dispute with regard to the real amount of the purchase money remaining unpaid to the appellee for the land sold by him to James Wason, deceased. This amount is correctly ascertained and stated by the auditor; but the appellant's exception to the account rests upon the fact that on the 2d day of May, 1867, Wason the purchaser, gave to the appellee three promissory notes of that date, viz: One for $1,000, payable on the first day of October, 1867, signed by himself and John W. Stouffer; one for $1,500, payable on the first day of January, 1868, signed by himself and John Kendel, and one for $449.38, signed by himself, payable on the first day of February, 1868, and on the same day the appellee gave to James Wason the following receipt:

"Received May 2d, 1867, from James Wason, twenty-nine hundred and forty-nine $\frac{38}{100}$ dollars, in full of payment due April 1st, 1867.

"$2,949.38 in notes.

("Signed,)               R. T. HOLLYDAY."

It is argued on the part of the appellant that this transaction operated as a waiver and extinguishment of the vendor's lien for so much of the purchase money as was secured by these notes; and that the same ought to have been disallowed in the computation of the appellee's claim for priority out of the fund in Court, which has arisen from the sale of the same lands under a creditors' bill against the heirs and personal representatives of James Wason, deceased.

It further appears that no part of the money secured by the notes has been paid; they are in the possession of the appellee and have been produced in Court.

The sale from the appellee to Wason is evidenced by articles of agreement; the legal title has not been conveyed, but remains in the appellee.

In this state of facts, there seems to be no authority which supports the appellant's position, that the vendor's lien was waived, by taking the promissory notes. In *Magruder vs. Peter*, 11 *G. & J.*, 218 it was held, " that a reservation of the legal title, in the contract of sale until the full payment of the purchase money, is a conclusive manifestation of the vendor's intent not to part with his lien therefor, and that the lien in that case was not waived by taking notes with endorsers to secure the purchase money."

In *Swarz vs. Stein*, 29 *Md.*, 119 it was said : " Whatever may be the rule maintained elsewhere, it is now too well established in this State to be called into question, that *where the vendor retains the title in himself*, but takes the note, bond or covenant of the vendee, with personal security of a third party, for the payment of the purchase money, this will not be of itself sufficient to justify the presumption of a waiver of the lien."

Where the legal title is conveyed the rule is different, and in such case, if other security is taken, the lien will be considered as waived or surrendered " unless there be an express agreement that it shall be retained."

In *McGonigal vs. Plummer*, 30 *Md.*, 422, the same principles are stated. In both the cases last cited the legal title had been conveyed ; and it was held that the lien had been waived. But in this case there are no circumstances to take it out of the rule stated in *Magruder vs. Peter*. The retention of the legal title by the appellee, in the absence of any proof to establish the contrary, conclusively shows that there has been no waiver or surrender of his lien for the unpaid purchase money.

We think it equally clear upon the authority of *Glenn vs. Smith*, 2 *G. & J.*, 493, that taking the three promissory notes, before referred to, did not operate as a payment of that much

of the purchase money. To give to the transaction such effect, as was said in *Glenn vs. Smith*, there must be an express agreement by the creditor to receive the notes absolutely as payment, and to run the risk of their being paid.

In that case a note with endorsers was taken, and the receipt given stated that it was "*in payment of the above account.*" But the Court held that was not sufficient evidence of an agreement to accept the note absolutely as payment.

In this case the only evidence relied on, is the receipt, which on its face states the amount to have been received "*in notes,*" and not as in *Glenn vs. Smith*, *in payment of* so much of the purchase money, but "*in full of payment due April 1st, 1867.*" This does not import an agreement on the part of the appellee to accept the notes absolutely as payment, but is a mere acknowledgment of the receipt of the notes, showing on what account they were received, and to what the proceeds were to be applied when paid. This construction of the receipt is abundantly established by the case of *Glenn vs. Smith* and the cases there cited by the Court in its opinion.

We may add that this construction is supported by the other facts and circumstances in this case. In the contract of sale, it was stipulated that upon the payment of $7,000 of the purchase money, Wason should be entitled to a deed, he securing to the vendor the payment of the balance of the purchase money, "by mortgage or otherwise satisfactory to the vendor."

Notwithstanding the amount of the three notes, together with the cash payments before made, exceeded $7,000, no deed was given and so far it appears none was demanded, though the purchaser lived for three months after the transaction, which is a strong circumstance to show if that was necessary, that it was not the understanding of the parties that the notes were taken as payment, and that the preëxisting debt to that extent was extinguished and the lien surrendered.

The view we have taken of the case, renders it unnecessary to consider the question, as to the equitable rights of the

sureties in the notes, in every event, to insist, for their relief, upon the application of the funds in Court, to the payment of the money thereby secured.

The order of the Court below ratifying the auditor's report will be affirmed, and the cause remanded.

*Order affirmed.*

(Decided 20th March, 1872.)