553 A.2d 1291

**John Michael KEARNS**

v.

**Rosann M. KEARNS.**

**No. 750, Sept. Term 1988**

Court of Special Appeals of Maryland.

March 2, 1989.

John Michael Kearns, Gaithersburg, for appellant.

Bryan Renehan (Ellen L. Lee and Brodsky, Greenblatt & Renehan, Chartered on the brief), Gaithersburg, for appellee.

Argued before MOYLAN and POLLITT, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

JAMES S. GETTY, Judge, Specially Assigned.

■ This appeal raises issues of child support and a monetary award. The appellant, John M. Kearns, alleges that both awards are excessive and he seeks a modification thereof.[1]

Rosann M. Kearns, the appellee, and John M. Kearns were married on October 6, 1984. The parties have one child, John Robert Kearns, now three years old. A separation occurred in October, 1986, and on February 9, 1988, the Circuit Court for Montgomery County (Raker, J.) rendered an oral opinion granting the appellant a divorce based upon appellee's desertion. Pursuant to the court's direction, a decree was submitted to and signed by the trial judge on April 7, 1988.

Aside from the marital home, the bulk of marital property consists of the parties' IBM benefits titled in the appellant's name. At the time of the divorce, appellant was employed by IBM and his gross income amounted to $5,143.66 per month. The appellee was also an IBM employee whose gross earnings totaled $1,885.00 monthly.

Prior to trial the parties agreed upon a division of their personal property. In adjusting the equities between the parties, the court granted the appellee a monetary award of $12,500.00 and ordered appellant to pay $600.00 per month child support. Exclusive use of the marital home was awarded to appellee for one year dating from February 8, 1988. Following the expiration of the one year possession order, the marital home was to be sold (unless the parties agreed to some other disposition) and the net proceeds in the event of a sale were to be equally divided between the

---

1. This appeal could be dismissed for failure of the *pro se* appellant to comply with the Rules regarding preparation of the record extract and style and form of his brief. Specifically, he failed to obtain agreement on the parts of the record to be included in the extract resulting in omissions of testimony unfavorable to him. Rule 8–501(d)(1). His brief, furthermore, exceeds the permissible number of pages because it is single spaced. Rule 8–112. We have opted to address the merits of the case due to the importance of at least one of the issues raised.

parties. The appellant's claim for nonmarital contributions toward the purchase of the home were denied, as was the appellee's claim for alimony.

The court awarded joint custody of the minor child on an alternate weekly basis. The appellant, however, was obligated to pay the $600.00 per month child support for the entire year notwithstanding that he had custody for one-half of the time. Baby-sitting charges were to be paid by the appellant when he had physical custody of the child and by the appellee when the child was in her care. The monetary award of $12,500.00 was to be paid by Qualified Domestic Relations Order (QDRO) from appellant's tax-deferred savings plan (TDSP) and his employee stock option plan (ESOP) which the court valued at $22,173.70.

The appellant phrased the issues to be addressed on appeal as follows:

I.    Did the chancellor err in allowing counsel for the appellee so much latitude in regards to interpretation of her oral judgment and intent?

II.   Did the chancellor improperly fix the amount of child support and maintenance payable to the appellee?

III.  Did the chancellor err in awarding the appellee 50% of the value of the marital home?

IV.   Did the chancellor err in awarding to the appellee an amount in excess of the appellant's TDSP as a monetary award?

I.

The thrust of appellant's argument on his first issue appears to be that the judgment entered on April 7, 1988, differed from the oral opinion of February 9, 1988. We find no merit in this assertion. The trial judge specifically directed that a written order be submitted. Appellant contends that the trial judge "signed an open ended written judgment benefitting the appellee." This bald allegation is not supported by the record. The trial judge in her oral

opinion clearly discussed with counsel all of the issues raised, indicating what the written decree should set forth.

■ An oral opinion, moreover, is not a final judgment and is not the subject of an appeal where, as here, a written opinion is directed to be submitted. Md.Rule 2–601; *Hudson Building Supply Company, Inc. v. Stulman*, 258 Md. 304, 265 A.2d 925 (1970). Although no change of mind by the court occurred in this case, between the oral ruling and the entry of judgment, a trial court may change its mind in whole or in part. *See, Billman v. Maryland Deposit Insurance Fund Corporation*, 312 Md. 128, 538 A.2d 1172 (1988).

## II.

■ The appellant's net income is $3,775.00 per month. The appellee's net salary is $1,048.00 per month. The combined net income is $4,823.00 per month. Of the total spendable income, the appellant enjoys 78.5% and appellee 21.5%. The $600.00 awarded the appellee for child support amounts to approximately 16% of the appellant's net income per month.

In awarding child support there are no magic formulae mandating the amount to be paid. The circumstances in each case govern the award. The child is entitled to have his or her needs measured by the current earnings and standard of living enjoyed by his or her parents. *Cole v. Cole*, 44 Md.App. 435, 409 A.2d 734 (1979). We hold that the trial judge did not abuse her discretion in requiring the appellant to pay $600.00 a month for the support of his son. Appellant's argument on this issue is based upon what he describes as the "Melson formula" used, he alleges, in Delaware.[2]

---

**2.** As of this time Maryland has considered, but not adopted, guidelines for determining child support.

### III.

Appellant argues that the trial court erred in deciding that the residence should be considered wholly marital property subject to equitable distribution. He contends that the property should have been characterized as part marital and part nonmarital by reason of his contribution of $27,000.00 toward the purchase price which was directly traceable to the proceeds from the sale of a home he owned and sold prior to the marriage.

The trial court concluded that appellant made a gift of the $27,000.00 to the appellee and, therefore, the residence was wholly marital property. Appellant denies that any gift was intended and requests that we require the trial court to reconsider the marital award after crediting him with his nonmarital contribution toward the acquisition of the home.[3]

A review of the record relating to the acquisition of the marital home in Maryland establishes that the appellant owned a home in Santa Clara, California, prior to the marriage. Following his transfer to San Diego, he sold the home, but did not receive payment until after the marriage. Appellant received $27,000.00 from the sale. The appellee contends that she paid approximately $6,576.00 toward the attorney's fees incurred in the sale of the property due to the litigation involved in the sale.

In February or March, 1986, when the marital home was acquired, the parties made a down payment of approximately $31,000.00 toward the purchase of the house they were buying for $161,000.00. The appellant's contribution amounted to either $27,000.00 or that amount less the $6,576.00 the appellee allegedly paid, depending upon which version of the testimony the trial court determined to be

---

3. Appellant filed this appeal *pro se.* The relief he is seeking is difficult to ascertain. He argued that the monetary award was excessive. We conclude that he seeks a review of that award based upon his nonmarital contribution toward the purchase of the property. The trial court stated that appellant "wanted his $27,000.00 back." A lien for $27,000.00 after sale would be a transfer of ownership of property which is forbidden by Family Law Article, sec. 8–202(a)(3).

more credible. The trial court did not set forth the particular facts upon which it concluded that the appellant intended to make a gift of his premarital funds to the appellee. In general terms, the court said:

> But I think that their whole living arrangement suggests that everything was to be one and to be shared and owned together, and I do not think there is any evidence, other than the fact that they are here today and sorry perhaps there was no pre-nuptial agreement to support an agreement that either party intended to keep what they brought into the marriage as theirs.

Later, in summarizing the issues, the trial court added:

> I find from all of the evidence that there was an intent to make a gift of that money to his wife. There was no intent when the family home was purchased, that the down payment remain Mr. Kearns' separate money. Obviously, by its entirety does not necessarily mean that there was a gift.
>
> However, and I stress this, from the facts of this case, and all of the evidence presented herein, I do not find the intent necessary on Mr. Kearns' part to support his position. I find, rather, that he intended to make a gift to his wife and to the family, and it is only narrow in retrospect, because, as he says, as things turned out, that he would like that $27,000.00 back. But I do not find that the evidence supports that.

The appellant argued that the appellee had not said one single word that a gift was intended by the appellant's contribution to the purchase of the home. Additionally, the appellant contended at the hearing, and now, that under the trial court's construction of the law it would be almost impossible for either party to a marriage to preserve non-marital property in the absence of a prenuptial agreement, despite the fact that the Legislature has carefully crafted rules for determining what is and what is not marital property in section 8–201 of the Family Law Article of the Maryland Code.

The relevant testimony from the parties on the property issue is as follows:

Q. You [appellee] never received that money back [the amount appellee paid toward appellant's counsel fees] from your husband after he got the settlement?

A. No.

THE COURT: Did you expect it back, or were you pooling your finances?

A. Everything was going together, we were working together on everything.

THE COURT: You [appellant] just took the money from the first house and put it down on the second house, it was your intention that you were to both own that house together?

APPELLANT: Yeah. I was. We were going to have a family back here, you know. And it was just a great family neighborhood. And that was the intention.

The problem with the court's theory that the appellant intended to make a gift to the appellee of the premarital funds he contributed toward the purchase of the home is that neither he nor she gave any thought to a divorce, or to a gift of funds, or to the financial consequences of a failed marriage when they bought the house.

The Court of Appeals, in *Dorsey v. Dorsey*, 302 Md. 312, 487 A.2d 1181 (1985), set forth that the presumption of gift arising from titling property in the names of both spouses, so that each owns ½ if a divorce occurs, "has no application when characterizing property as marital or nonmarital under sec. 8–201(e) for the purpose of granting a marital award under 8–205(a)."

■ The appropriate method of determining whether property is marital or nonmarital for the purpose of granting a monetary award is the "source of funds" theory set forth in *Harper v. Harper*, 294 Md. 54, 448 A.2d 916 (1982), stating:

[A] determination of what constitutes marital property for the purpose of granting a monetary award ... depends upon the source of the contributions as payments

are made, rather than the time at which legal or equitable title to or possession of the property is obtained.

This analysis was also adopted in *Wilen v. Wilen*, 61 Md.App. 337, 486 A.2d 775 (1985). The husband argued, and we agreed, that because the home was purchased in part with funds he received from the sale of a house he owned prior to the marriage, the entire property could not be considered marital. The present case is no different.

A case decided in the present term of court, *Watson v. Watson*, 77 Md.App. 622, 551 A.2d 505 (1989), is relevant to the gift issue. The Watsons were married in 1967 and purchased a home titled in both names in 1971. Eight years later they opted to buy a larger home to accommodate their growing family. Mr. Watson asked for an advancement from his mother against his contemplated inheritance from her and received $40,000.00. The money was deposited in a joint savings account together with the proceeds from the sale of the first residence. A new home was purchased in 1979 and titled as tenants by the entireties.

The parties were divorced in 1983. Mrs. Watson claimed, and the trial court granted her, a one-half interest in the property.[4] Mrs. Watson conceded that the $40,000.00 was a gift to her husband alone and that a presumption of gift does not arise by virtue of titling property as tenants by the entirety. She maintained, however, that her husband's testimony showed the requisite donative intent to make a valid gift to her of one-half of the second home without regard to any presumption of a gift.

This Court reversed the decision of the trial court. We said (Bloom, J.):

What is at issue here, therefore, is not whether the appellant gave appellee a legal estate or interest in his property, but whether he also gave, surrendered, released, or waived his right, in the event of a future

---

4. Initially, the Special Master and the trial court granted Mr. Watson a $40,000.00 credit for his nonmarital contribution. Upon review, an *en banc* panel of the court reversed and deleted the credit.

divorce, to claim whatever benefits the nonmarital status of the property would afford him when the court determines whether to grant either party a monetary award in order to effect an equitable adjustment.

One spouse may, of course, give up or waive this contingent right in favor of the other spouse. Indeed, it is relatively common for such waivers to be included in formal marital settlement agreements. No particular formality is required, however. Any conduct or language that clearly indicates such an intent will suffice. *See, e.g., Carsey v. Carsey,* 67 Md.App. 544 [508 A.2d 533]. But as with any gift or waiver, an intent to make it must be shown, and the party claiming that there was a gift or waiver of the contingent equitable right or claim in addition to a gift of the legal estate has the burden of proving that intent.

At 636–37, 551 A.2d at 512.

We think the holding in *Watson, supra,* is relevant and applicable to the facts presented in the case *sub judice.* Accordingly, we reverse.

■ Clearly, appellant gave appellee a legal estate or interest in the property by placing the funds used to purchase the property in a joint account and subsequently titling the property as tenants by the entireties. What he did not do, however, was surrender or waive his right to claim the nonmarital funds he provided where, as here, the court grants a monetary award to effect an equitable adjustment in a divorce action. The record is devoid of any evidence of a gift of appellant's contingent equitable claim in addition to a gift of the legal estate and the trial court's finding of a gift of appellant's contingent equitable claim is clearly erroneous. On this issue we remand so that the court may consider the nonmarital contributions of each party to the purchase of the property as articulated in *Harper v. Harper,* 294 Md. 54, 448 A.2d 916 (1982); *Grant v. Zich,* 300 Md. 256, 477 A.2d 1163 (1984).

The trial judge stated that she did not find "the intent necessary on Mr. Kearns part to support his position."

Appellant's "position" was that he did not intend to make a gift of his pre-marital interest. We point out that when characterizing property for the purposes of making a monetary award, a presumption of gift does not arise from titling the residence as tenants by the entireties. The spouse claiming a gift has the burden of producing evidence and proving that a gift was made. *Grant v. Zich, supra.* Appellee had that burden, not the appellant.

## IV.

We need not address appellant's fourth issue contesting the amount of the monetary award, since we are remanding as to the third issue. Upon remand the trial court should use the source of funds approach in determining what constitutes marital property and, thereafter, whether a monetary award is appropriate and, if so, in what amount.

JUDGMENT AFFIRMED IN PART, REVERSED AS TO ISSUE NO. III AND REMANDED TO CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PRO-CEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLANT.